**In re Stephen TAYLOR, Karen Taylor, Debtors.**

**Bankruptcy No. 1–83–00250.**

United States Bankruptcy Court,
M.D. Pennsylvania.

Jan. 10, 1985.

Daniel Stern, New Bloomfield, Pa., for debtors.

Leon P. Haller, Harrisburg, Pa., Trustee.

### MEMORANDUM GRANTING ABANDONMENT

ROBERT J. WOODSIDE, Bankruptcy Judge.

In this case the United States of America filed a Motion to Abandon Certain Equipment and Machinery of the debtors. The basis of the Motion was that Farmers Home Administration, United States De-

partment of Agriculture (hereinafter FmHA) had loaned $170,300 to the debtors which was secured by a security interest, properly perfected in the debtors' farm equipment and machinery. The Motion further alleges that there is no equity for general creditors in this personal property and that therefore the trustee should abandon it.

The trustee filed an objection in regard to only one item which was a six-row corn planter. This piece of equipment was sold prior to the filing, and the proceeds of $4,706 is being held by the trustee. The trustee contends that since the corn planter was purchased subsequent to the loan and security agreement FmHA does not have a perfected security interest in it.

There is no question that the security agreement is intended to apply to after-acquired equipment. It specifically provides:

> Item 2. All farm and other equipment (except small tools and small equipment unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following:

This agreement clearly shows that the parties contemplated that FmHA would have a security interest in after-acquired equipment. Indeed the trustee does not seriously contend that the security agreement fails to cover after-acquired equipment. He argues that FmHA had no security interest in the corn planter because the financing statement was ineffective. It is his contention that by failing to mention after-acquired property in the financing statement FmHA cannot acquire a valid perfected security interest in such property.

The applicable law is found in section 9–402 of the Uniform Commercial Code 12A P.S. § 9–402:

> (a) General Rule.—A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which informa-tion concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown, the statement must also contain a description of the real estate concerned.

*Cf.* 13 Pa.Con.Stat.Ann. § 9402(a) (Purdon 1984).

The financing statement of FmHA in relevant part provides: "This financing statement covers the following types of collateral, including proceeds and products thereof: (a) crops, livestock, supplies, other farm products and farm and other equipment."

The Third Circuit has held the designation in a financing statement that "all assets as contained in the security agreement executed even date herewith" failed to meet the statutory requirements of section 9–402(1) for a valid financing statement. In *In the Matter of H.L. Bennett Co.*, 588 F.2d 389 (3rd Cir.1978). The Third Circuit commented on the specificity necessary for a financing statement to perfect a security interest.

> (4) Section 9–402(1) is a response to the old chattel mortgages acts, which required extremely specific identifications of collateral in order to perfect a creditor's security interest. *See* 1 G. Gilmore, § 2.7, at 52–53; UCC § 9–110, comment. Section § 9–402(1) still permits a creditor to describe each individual "item" of collateral in his financing statement. The drafters of the statute appeared to recognize, however, that in certain circumstances, enumerating every item of collateral would be extremely burdensome, if not impossible and therefore permitted a financing statement merely to provide notice of an existing security interest in property by identifying the "types" of property serving as collateral. *In sum, we read section 9–402(1) as permitting a creditor either to give a detailed de-*

*scription of each piece of personal property which would serve as collateral, if it is convenient for him to do so, or to list the collateral by types if he so chooses. Nothing in this interpretation of the statute, however, would enable creditor to comply with section 9-402(1) by identifying collateral any less specifically than by reference to the categories of personal property defined in Article 9 of the UCC.*

*Id.* at page 393 (emphasis supplied).

Crops, livestock, supplies, other farm products and farm and other equipment as designated in the FmHA financing statement are categories of personal property defined in Article 9 of the UCC (see 13 Pa.Con.Stat.Ann. § 9109). The financing statement therefore has perfected FmHA security interest in the equipment of the debtor. But the question is: Does this security interest attach to the corn planter purchased subsequent to the filing of the financing statement?

Counsel did not supply nor could this court locate any Pennsylvania cases that dealt with this specific issue in regard to equipment. In holding that it was not necessary to include the word "future" to perfect a continuing security interest in accounts receivable and inventory the court in *In re Platt,* 257 F.Supp. 478 (E.D.Pa. 1966) stated:

> The Code adopts the system of "notice filing" which requires a filing only of a simple notice which indicates merely that the secured party who has filed may have a security interest in the collateral described. Comment, § 9–402.

> A detailed description of the collateral in the case of accounts and inventory would require the filing of daily statements. The addition of the word "future" to accounts receivable and inventory would not seem to help an interested party in determining the status of the debtor. It should be clear that the creditor is concerned with tying up whatever is the current inventory and accounts receiva-

ble of the debtor. No reasonable searcher of the records would conclude that the secured party had a lien on only the past accounts and inventory of the debtor, especially where the debtor is in an active retailing business.

*Id.* at page 481.

■ The trustee, while acknowledging the *Platt* case holding, argues that farm equipment is a different type of collateral than inventory and accounts receivable, and points out that one would naturally expect inventory and accounts receivable to be changing which would not be true of farm equipment. While there are no Pennsylvania cases on point some other jurisdictions have held that it is not necessary to have an "after-acquired" provision in the financing statement to perfect a security interest in such property. In *American National B & T Co. v. National Cash Register Co.,* 473 P.2d 234 (Okh.1970), it was held that a cash register purchased subsequent to the filing of a financing statement was subject to a security interest even though the financing statement did not have an after-acquired provision in it. *See also, National Cash Register Company v. Firestone & Co., Inc.,* 346 Mass. 255, 191 N.E.2d 471 (1963). The rationale for the more liberal interpretation of the validity of a security interest in the absence of an after-acquired property clause in the financing statement is the Code's intent that it is basically a notice provision. Once notice is provided as to the type of the collateral in the financing statement there is duty to make inquiry of the secured party's agreement in order to determine the extent of the security interest.

The more liberal construction toward the validity of the financing statement is adopted by the 1972 Uniform Commercial Code comment to Section 9–204:

> The effect of after-acquired property and future advance clauses in the security agreement should not be confused with the use of financing statements in notice

filing. The references to after-acquired property clauses and future advance clauses in Section 9–204 are limited to security agreements. This section follows Section 9–203, the section requiring a written security agreement, and its purpose is to make clear that confirmatory agreements are not necessary where the basic agreement has the clauses mentioned. This section has no reference to the operation of financing statements. The filing of a financing statement is effective to perfect security interests as to which the other required elements for perfection exist, whether the security agreement involved is one existing at the date of filing with an after-acquired property clause or a future advance clause, or whether the applicable security agreement is executed later. Indeed, Section 9–402(1) expressly contemplates that a financing statement may be filed when there is no security agreement. *There is no need to refer to after-acquired property or future advances in the financing statement.*

13 Pa.Con.Stat.Ann. § 9204, pp. 208, 209, (emphasis supplied).

While the comments are not binding, both the Third Circuit Court of Appeals and the Pennsylvania Supreme Court have given the comments substantial weight in interpreting the legislative intent of the Uniform Commercial Code. *In re Bristol Associates, Inc.,* 505 F.2d 1056 (3rd Cir.1974); *Philadelphia Title Insurance Co. v. Fidelity—Philadelphia Trust Co.,* 419 Pa. 78, 212 A.2d 222 (1965).

 It is obvious that great weight should be placed on the comments in interpreting the Uniform Commercial Code. We conclude that the legislature did not intend that an after-acquired provision be necessary in the financing statement to have a validly perfected security interest in property of the "type" set forth in the financing statement which is purchased subsequent to the filing. An appropriate order will be entered.