**In re Irwin W. ENGLE, Grace E. Engle, jointly and individually, t/a Bannerview Farms, Debtors.**

**Bankruptcy No. 83–04619 T.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 20, 1987.

Richard A. Umbenhauer, Lancaster, Pa., for debtors.

Mark G. Yoder, Bingaman, Hess, Coblentz & Bell, Reading, Pa., for American Bank.

Dale E. Lapp, Lancaster, Pa., for Unsecured Creditors' Committee.

Richard B. Posey, Lititz, Pa., for Hamilton Bank.

James R. Leonard, Jr., Lancaster, Pa., trustee.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

In this proceeding, Meridian Bank[1] ("bank") seeks to prove entitlement to turnover of proceeds of an equipment auction[2] and a livestock auction[3] by virtue of a security interest in such property. The bank also seeks turnover of escrow funds generated by the debtors' milk proceeds

---

1. Meridian Bank is successor to the American Bank and Trust Company of Pennsylvania.

2. The equipment auction held November 14, 1985 fetched $68,236.85.

3. The livestock auction held September 20, 1985 and September 27, 1985 fetched $50,755.00.

pursuant to a proposed stipulation between the bank and the debtor which allowed the debtors' continued use of the dairy farm. This court grants the bank's motion for turnover of proceeds from the equipment and the livestock auctions. We deny the bank's motion for turnover of escrow funds.

The Engles ("debtors") were, at all relevant times in this proceeding, Lancaster County dairy farmers. The debtors' bankruptcy was commenced as a Chapter 11 farm bankruptcy in November, 1983. Meridian Bank sought relief from the automatic stay to move against the debtors' real estate, and after several hearings, that relief was granted on August 9, 1985. The farm real estate was sold at sheriff sale on November 22, 1985. The debtors' business was discontinued and the debtors' equipment and livestock were sold at separate auctions, generating a cash fund against which the bank asserts a lien. The case was converted to Chapter 7 and James R. Leonard, Jr., Esquire was appointed as trustee.

During the course of the proceedings, relative to the bank's motion for relief from the automatic stay, a stipulation was tentatively agreed to between the debtors and the bank, providing for, *inter alia,* payment to the bank of $8,000.00 per month as a form of adequate protection and in exchange for allowing the debtors continued use of the farm. The stipulation was never court approved. Nonetheless, monthly payments were made pursuant to the stipulation for approximately one year resulting in an escrow fund in excess of $100,000.00. The trustee objects to the turnover of *any* of the funds, taking the position that: (1) the equipment sold at auction was not covered by any security agreement between the debtors and the bank; (2) the livestock sold at auction was not covered by any security agreement between the debtors and the bank; and (3) the bank was not entitled to adequate protection, or the fund generated for that purpose, after it was granted relief from the automatic stay. We grant the bank's motions to the extent they seek entitlement to funds generated by the equipment and live-

stock auctions. We deny the bank's motion to seek turnover of the escrow fund created pursuant to the proposed stipulation.

The trustee argues that the bank did not hold a perfected security interest in the debtors' equipment or livestock because the financing statement filed attendant to the security agreement covering livestock and equipment did not include a future advance clause or an after-acquired property clause, therefore, the bank had no security interest in livestock and equipment acquired by the debtors' subsequent to March, 1975. The trustee relies upon *In re Middle Atlantic Stud Welding,* 503 F.2d 1133 (3d Cir.1974) and this court's decision in *In re Young,* 42 B.R. 939 (Bankr.E.D.Pa.1984).

■■■ In *Young,* we interpreted *Middle Atlantic* to stand for the proposition that specific reference to after-acquired property is required in both the security agreement and financing statement in order for a creditor to have a perfected security interest in after-acquired collateral. Upon re-reexamination of *Middle Atlantic* and after careful consideration of the decisions in *In re Platt,* 257 F.Supp. 478 (E.D.Pa. 1966) and *In re Taylor,* 45 B.R. 643 (Bankr. E.D.Pa.1985), we now hold that the absence of an after-acquired provision in the financing statement does not, by itself, preclude a perfected interest in after-acquired property. We believe this position more accurately interprets the Third Circuit's *Middle Atlantic* decision. Section 9–204(1) of the Uniform Commercial Code supports this position in its 1972 comments:

> There is no need to refer to after-acquired property or future advances in the financing statement.

13 Pa.Con.Stat.Ann. § 9204, pp. 208, 209. While we are aware that the comments are not binding, we give them substantial weight in interpretating legislative intent. We conclude that the legislature did not intend to require an after-acquired provision or a future advance clause in the financing statement in order to have a validly perfected security interest in property of the "type" set forth in the financing statement which is acquired subsequent to the

filing. It would logically follow that, in the case at bar, the bank held a valid security interest in after-acquired property [4] where the March, 1975 Security Agreement contained an after-acquired property clause and the financing statement referred to, *inter alia*, farm equipment.[5] Pursuant to the standards imposed by Article 9 of the U.C.C., the bank is the holder of a perfected security interest in farm equipment and is entitled to the proceeds of the auction of such equipment. We shall grant the bank's motion for turnover of the equipment auction proceeds.

■ The trustee also objects to the bank's claim to the proceeds of the livestock auction. The bank contends that they hold a perfected interest in 113 cows and 48 heifers as pledged in the March, 1975 security agreement. This agreement contains an after-acquired property clause which pertains to, *inter alia,* livestock. We hold that the existence of the after-acquired property clause in the security agreement was sufficient to give the bank the perfected interest in livestock acquired after March, 1975. The report of the livestock auctioneer employed in this case indicates the proceeds of the sale totalled $123,097.50. The amount of net proceeds, after payment of Hamilton Bank's claim of $46,346.16, is $76,751.34, exclusive of interest. Since the March, 1975 security agreement speaks of 161 animals [6] and since the auctioneer's report does not differentiate between cows and heifers, the bank has a perfected security interest in the lowest priced 161 animals. We hold, therefore, that the bank is entitled to turnover the proceeds of the livestock auction in the amount of $50,755.00 and grant the bank's motion to that extent.

■ The third motion under consideration is the bank's request for turnover of escrow funds created by virtue of the $8,000.00 per month payments made by the debtor in accordance with the proposed stipulation between the debtors and the bank. In simple terms, the debtors were to pay $8,000.00 per month to the bank to ensure adequate protection. In return, the bank was to allow the debtors continued uninterrupted use of the dairy farm. The debtors paid $8,000.00 per month for one full year into an escrow account since the stipulation had not gained bankruptcy court approval. The bank claims entitlement to the escrow fund on two grounds. First, the monthly payments should have been made directly to the bank as an element of adequate protection pursuant to Sections 361 and 362 of the Bankruptcy Code, therefore, the bank is entitled to the escrow fund. Second, the entitlement also stems from the fact that the stay was imposed at a time when the value of the bank's collateral was declining and the bank has a right to have that decline protected.

The trustee argues, and we agree, that the fund was generated by the post petition operation of the debtors's business and the stipulation was never effective because it was never approved. No order was entered by this court awarding the money to the bank prior to lifting the stay. After the stay was lifted, there was no property being used by the debtors for which the bank could request adequate protection. The bank chose to seek foreclosure rather than continue under the proposed stipulation. Once the stay was lifted, the bank was no longer entitled to adequate protection. Additionally, the bank argues that the value of its collateral declined while the stay was in effect. Even assuming, *arguendo*, that this is true, there is no basis for this court to award monies set aside for "adequate protection" of a property interest after that property has been surrendered to the secured creditor. Once the foreclosure was permitted, the right to adequate protection was gone. Consequently, we find no merit in the bank's argument and deny the bank's motion for turnover of escrow funds.

4. Both farm equipment and livestock.

5. The financing statement was timely continued in 1980 and 1985.

6. Namely, 131 cows and 48 heifers.

874

For the reasons set forth above, this court will grant the bank's motions for turnover of proceeds of the equipment auction and livestock auction to the extent of $50,755.00. We will deny the bank's motion for turnover of escrow funds in its entirety.

An appropriate order will follow.