**In re PA RECORD OUTLET, INC., Debtor.**

**PA RECORD OUTLET, INC., Plaintiff,**

v.

**MELLON BANK, N.A., Defendant.**

Bankruptcy No. 86–190.
Adv. No. 88–036.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 20, 1988.

David W. Lampl, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for plaintiff.

J. Michael McCague, Jr., D.S. Mazzotta & Associates, P.C., Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is Debtor's *Complaint for Recovery of Preferential Transfer* against Defendant, Mellon Bank, N.A. ("Mellon"). The parties have stipulated to the essential facts, and have reduced the remaining issues to the following:

(1) Is the use of a UCC–3 Official Amendment Form sufficient to reflect a name change by a debtor, pursuant to 13 Pa.C.S.A. § 9402(g), thereby obfuscating any "seriously misleading" error, and maintaining a perfected security interest?

(2) If yes, does the identification of collateral in said UCC–3, by referral to the original financing statement, meet the requirements of perfection?

A hearing was held at which time testimony was taken, and the parties have submitted post-trial briefs. Based upon same, and this Court's further research, we find that the filing of the UCC–3 amendment form was a proper way to continue Mellon's perfection, and that the collateral was sufficiently identified. Therefore Mellon did not receive a preference pursuant to 11 U.S.C. § 547.

### FACTS

PA Record Outlet, Inc. ("Debtor") filed a Chapter 11 bankruptcy petition on January 24, 1986. This debtor was previously known as Sounds Distributing Service, Inc. ("Sounds"), and changed its corporate name to Pennsylvania Record Outlet, Inc. on or about December 22, 1983.[1]

---

1. In a series of events which this Court is unable to explain, Sounds Distributing Service, Inc. filed a Chapter 11 bankruptcy petition on January 27, 1984, several weeks *after* the name change and, presumably, after an asset change. The rationale for filing a reorganization on behalf of a nonexistent or shell corporation appears somewhat enigmatic. After languishing in this Court for some time, Sounds was converted to a Chapter 7 case.

On September 22, 1978 Mellon provided Sounds with a $75,000.00 line of credit in return for which Mellon received a security interest in *inter alia*, Sound's inventory. UCC-1 financing statements were executed by Sounds and were filed with the appropriate state and local authorities. Continuation statements were similarly filed on August 16, 1983.

On February 9, 1984, after Sounds changed its name to Pennsylvania Record Outlet, Inc., a new Note and Security Agreement were executed with Mellon, in the sum of $300,000.00. New UCC-1 financing statements were not executed; rather, Mellon filed UCC-3 Amendment forms with the appropriate state and local authorities. The form lists the Debtor as Sounds Distributing Service, Inc., 3701 Bigelow Blvd., Pittsburgh, Pennsylvania 15213. The amendment states:

The Debtor has changed its name to:

The Pennsylvania Record Outlet, Inc.

The Debtor's new address is:

Great Southern Shopping Center,

Route 50, Bridgeville, PA 15017

The amendments also indicate that they are filed in relation to the original financing statements: 93109932 (state)/17757–1978 (local). When the amendment was received for filing, the state authority indexed it under Sounds Distributing Service, Inc. *and* Pennsylvania Record Outlet, Inc. The local authority indexed the amendment under Sounds Distributing Service, Inc. *only*, even though their procedure, if followed correctly, would also require it be indexed under PA Record Outlet, Inc.

During the ninety (90) days prior to Debtor's bankruptcy filing Mellon received $116,500.00 from the Debtor, toward the repayment of the Note. Debtor-in-Possession now alleges these payments to be a preference, averring Mellon was not properly perfected.

## ANALYSIS

■ The Uniform Commercial Code, as adopted in Pennsylvania, 13 Pa.C.S.A. § 1101 *et seq.*, states that the legislation is to be "liberally construed." 13 Pa.C.S.A. § 1102(a). Additionally, although the Com-

ments to the Code are not part of the legislative enactment, the Pennsylvania Supreme Court has given them significant weight, as showing the drafters' intent. *See Philadelphia Title Insurance Company v. Fidelity—Philadelphia Trust Company*, 419 Pa. 78, 212 A.2d 222 (1965). *See also, In re Bristol Associates, Inc.*, 505 F.2d 1056 (3rd Cir.1973); *In re Engle*, 73 B.R. 870 (Bankr.E.D.Pa.1987); *In re Taylor*, 45 B.R. 643 (Bankr.M.D.Pa.1985).

Article 9 of the Code encompasses that area of commercial law generally known as "Secured Transactions."

Pursuant to § 9402(a) and § 9402(g) of the Code:

(a) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral ...

(g) ... Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, *unless a new appropriate financing statement is filed* before the expiration of that time. (emphasis added).

During the four month period after Sounds changed its name, Mellon filed the aforementioned amendments indicating said change. Mellon used Official UCC-3 Amendment Forms. Debtor has challenged the sufficiency of these amendments as to both notice and content.

■ UCC financing statements are used to facilitate a "notice" filing system. This Court has determined that the appropriate method for indexing of the instant amendment would have been a dual classification under both the Debtor's former name and the Debtor's present name. In fact, such a dual indexing did occur at the state level.

The testimony of the local filing officer's deputy advised the Court that our preference for dual indexing is the appropriate procedure in the local filing office as well. There is no explanation for the failure to properly index in this case, except as an error on the part of the filing officer. The parties have agreed that a misindexing by the filing officer does not operate as an invalidation of the secured party's perfection. *Matter of Bufkin Bros., Inc.*, 757 F.2d 1573 (5th Cir.1985); *Matter of Glasco, Inc.*, 642 F.2d 793 (5th Cir.1981); *Matter of Royal Electrotype Corp.*, 485 F.2d 394 (3d Cir.1973). In the case at bar we presume, therefore, that a reasonable searcher would find these amendments, and that they provide the notice required under the Code.

In order for said amendments to substantively perfect Mellon's interests, they must meet the criteria for financing statements in general, as set forth in § 9402:

(1) debtor's name, mailing address, and signature;

(2) secured party's name and address; and

(3) description of the collateral.

It is axiomatic that a reasonable searcher, finding relevant information in a financing statement is expected to continue his inquiry. The notice provided in a financing statement merely indicates "... that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs." 13 Pa.C.S.A. § 9402, Official Comment 2.

In the case at bar all of the Debtor's and creditor's pertinent information is prominently displayed in the text of the amendment. The amendment states that the debtor's name and address have changed, and provides same to the searcher. The individual who is the principal officer of both the old and new debtor has signed the amendment. The only issue remaining is whether the identification of collateral, by way of document numbers referencing the original state and local financing statements, is a sufficient description to meet the requirements of UCC § 9402(a).

Section 9110 of the Code states that sufficiency of description relies not on whether it is specific, but rather whether it reasonably identifies what is described. *See Matter of Hemminger*, 20 B.R. 357 (Bankr.W.D.Pa.1982); *Heights v. Citizens National Bank*, 463 Pa. 48, 342 A.2d 738 (1975). However, there is no requirement that the description be complete within the "four corners" of the financing statement itself. *In re Beverage*, 30 U.C.C.Rep.Serv. 373 (Bankr.M.D.Pa.1980). Several federal courts sitting in Pennsylvania have held that a financing statement which makes reference to another document is not sufficient *unless* the document referred to is attached to the financing statement *or otherwise publicly filed* (emphasis added). *See*, Annotation, *Sufficiency of Description of Collateral in Financing Statement Under U.C.C. §§ 9–110 and 9–402*, 100 A.L.R.3d 10 (1987), and cases cited therein. The original financing statements are publicly filed documents, which a reasonable searcher could obtain by reference to their respective numbers, as duly noted on the amendment forms. The amendments meet all of the requirements to stand as financing statements, and therefore Mellon has retained its perfected status even as against the Debtor-in-Possession.

An appropriate Order will be issued.

### ORDER OF COURT

AND NOW at Pittsburgh in said District this 20th day of October, 1988, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that judgment is entered for Defendant.