**In re SPECIALTY FOODS OF PITTSBURGH, INC., Debtor.**

**Bankruptcy No. 87–03261.**
**Motion No. 89–1233M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

April 24, 1989.

---

J. Michael McCague, Jr., Pittsburgh, Pa., for Mellon Bank.

William T. Molczan, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., for trustee.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD,
Bankruptcy Judge.

Before the court is the motion of Mellon Bank to compel the Trustee to distribute proceeds of sale. The facts are undisputed. On or about February 10, 1984, the Debtor borrowed money from Mellon Bank, N.A. (hereafter Mellon). Mellon was given a first priority security interest in certain of Debtor's collateral. Debtor filed a Chapter 11 bankruptcy on November 10, 1987. The case was converted to Chapter 7 on February 7, 1988, and a Trustee was appointed. Part of the Debtor's estate included rights under ⋅a license agreement which entitled the Debtor-licensee to use a trademark in marketing certain foodstuffs. The Trustee filed a motion to sell the Debtor's rights under the license agreement as well as certain other personalty in which Mellon was secured. Mellon did not object to any portion of the sale.[1] *See* this court's opinion dated September 16, 1988 at 91 B.R. 364, 371, n. 7. The sale was conducted and an order approving the sale and transferring liens to proceeds was entered on September 20, 1988.

Mellon Bank filed the instant motion in February of 1989, claiming a security interest in the proceeds of sale of the license rights. The Trustee disputes Mellon's claim. Both parties base their contentions on a note and security agreement of which the relevant paragraph states:

"Undersigned agrees that Bank shall have, and there are hereby created in favor of Bank, the following security interests:

.  .  .  .  .

(d) A Uniform Commercial Code security interest in all of Undersigned's [Debtor's] rights to the payment of money however evidenced or arising including each existing and future account, contract right, general intangible, instrument and document, as those terms are defined in the Pennsylvania Uniform Commercial Code, with all trademarks, copyrights, good will, names, patents, licenses, inventions, choses in action and goods giving rise to Undersigned's right

---

1. The motion stated that the Trustee could not determine the extent or existence of Mellon's interest in the license agreement but that its liens on other collateral included in the sale would be divested and transferred to the proceeds. The sale clearly sold two distinct items: (1) the rights under the license agreement and (2) other property in which Mellon's security interest was not and is not disputed.

to the payment of money, including such goods in which Undersigned has retained a security interest or which have been reclaimed, returned or repossessed, all documents of title and warehouse receipts, and all book entries, records and files relating to the foregoing, and the proceeds (cash and non-cash) of all the foregoing and any insurance policies relating thereto."

Mellon interprets •this paragraph as granting a security interest in the license agreement, as a general intangible. Trustee contends that the quoted language provides Mellon a security interest only in a right to the payment of money and not in the asset itself.

It is undisputed that Mellon filed a Standard Form UCC–1 in the appropriate locations. The financing statement covers the following types of property:

"All Debtor's right, title, and interest, whether now or hereafter existing or acquired, in and to all inventory (including returned or repossessed goods), accounts, open account, contract rights, general intangibles, documents, chattel paper, instruments, notes, drafts, letters or advises of credit, receivables, other amounts owing to borrower, equipment, all (products and) proceeds (including insurance policies and proceeds) of the foregoing and all guaranties, claims, rights, remedies and privileges relating thereto."

Thus, Mellon's financing statement purports to perfect its interest in the Debtor's general intangibles, including its rights under the license agreement. The question, however, is whether the note and security agreement provided Mellon with such an interest.

■ We must first determine whether the license agreement was an "account" or a "general intangible." With some modifications, Pennsylvania has adopted the Uniform Commercial Code. 13 Pa.C.S.A. § 1101 *et seq.* Section 9106 of Title 13 defines "account" as "[a]ny right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper; whether or not it has been earned by performance." The same section defines "general intangible" as "[a]ny personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments and money...." The comments to § 9106 specify that the term "general intangibles" does not apply to money. It is the definition of "account" which covers the right to payment of money.

At least one court has recognized that certain license agreements may be general intangibles. *First Pennsylvania Bank, N.A. v. Wildwood Clam Co., Inc.,* 535 F.Supp. 266 (D.D.C.1982). *Cf. The Money Store v. Harris Corp. Finance, Inc.,* 689 F.2d 666, 676 (7th Cir.1982) ("It is not necessary to the continuing validity of the mark that tangible assets ... pass to the assignee"); *Sterling Brewers, Inc. v. Schenley Industries, Inc.,* 441 F.2d 675, 680 (C.C.Pat.App.1971) (tangible assets need not be included in assignment of trademark with goodwill). Whether the general intangible is subject to a security interest depends on the agreement. In *Wildwood Clam* the agreement granted a security interest specifically in "general intangibles." In this case, however, the security agreement drafted by Mellon and signed by the Debtor's representative created a security interest in Debtor's "rights to payment of money" arising from accounts, or from license as royalties, or from proceeds of sales of goods, etc. There was no security interest created in Debtor's general intangibles themselves. Because there was no security interest in the license agreement, there is none in the proceeds of its sale. 13 Pa.C.S.A. § 9306.

■ The next question, then, is whether the license agreement was an "account." A security agreement is effective between the parties, purchasers and creditors "according to its terms." 13 Pa.C.S.A. § 9201. The security agreement speaks of rights to payment of money from various sources. An examination of the license agreement establishes that the Debtor was not entitled to the payment of any money; rather, Debtor was given the right to use a trademark in marketing specified foods. The

licensor was required to renew the license and to protect against infringement, assuming certain conditions were met. Neither the licensor nor Debtor had rights to money under the license.[2] Trustee's interpretation of the security agreement, *i.e.*, that Mellon is not secured in proceeds of assets which do not provide Debtor with a right to payment of money, is valid. Thus the license agreement was not an account.[3]

For these reasons, Mellon is not secured in the license agreement or its proceeds and the motion to compel the Trustee to distribute the proceeds of its sale must be denied.

A further issue arising under the instant motion involves Mellon's security interest in equipment which was sold by the Trustee. Trustee concedes that Mellon is secured in that personalty and agrees to distribute the applicable sales proceeds.

An appropriate order will issue.

### ORDER

And now, to-wit, this 24th day April, 1989, for the reasons set forth in the foregoing Memorandum Opinion, it is ORDERED that the Motion to Compel Trustee to Distribute Proceeds of Sale is GRANTED IN PART and DENIED IN PART as follows:

1. Trustee shall distribute to Mellon Bank $2,000.00, representing the proceeds of sale of equipment as to which Mellon is secured.

2. Trustee shall not distribute the remainder of proceeds, generated from the sale of a license agreement, as to which Mellon is not secured, until further Order of Court.

It is FURTHER ORDERED that within thirty (30) days hereof, Trustee shall file a Final Account and Proposed Order of Distribution or, in lieu thereof, a status report concerning the actions taken to date to finalize this estate and an indication of why a Final Account and Proposed Order of Distribution cannot be filed.

---

**2.** The license agreement states in part "... Licensor hereby grants to Licensee a *fully paid-up* exclusive right and license to use the New Mark...." (Emphasis added.) *See* 1986 License Agreement. This is the only reference to a payment of money in the agreement and it refers to a payment *by* Debtor, not to Debtor.

**3.** We also note that there exists a question as to whether any purported security interest of Mellon in the license agreement could be valid under the terms of the license. We need not decide this.