In re SCHEIDMANTEL OLDS–
CADILLAC, INC.,
Debtor(s).

CENTURY NATIONAL
BANK, Movant(s),

v.

SCHEIDMANTEL OLDS–CADILLAC,
INC., The *Auto Body Works, Auto Trim
Design–PGH,* Car Cleen Systems, Inc.,
DCL Auto Painting, The News, Tire
Center U.S.A. of Beaver Falls, Respon-
dent(s).

Bankruptcy No. 92–01270 JKF.
Motion No. RJT–1.

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 15, 1992.

Stanley G. Makoroff, Pittsburgh, Pa., for debtor.

Robert J. Taylor, Ambridge, Pa., for Century Nat. Bank.

J. Philip Colavincenzo, Beaver, Pa., for respondents.

Donald R. Calaiaro, Pittsburgh, Pa., for Friend Motors.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

Before the court is the motion of Century National Bank (hereafter "Century") to authorize payment to it from the proceeds of a sale. The essential facts are not disputed and are detailed in Century's brief in support of its motion.

Scheidmantel Olds–Cadillac, Inc., (hereafter "Debtor") is the successor of Cory Olds–Cadillac, an automobile dealer. Century is Debtor's secured creditor pursuant to a duly recorded financing statement and security and loan agreement with Cory Olds–Cadillac. As noted in the security and loan agreement, Century is secured in all equipment, inventory and receivables. The agreement also states that "the Financing Statement covers ... All used car inventory, new and used parts and accessories, accounts, contract rights, accounts receivable, chattel paper, furniture, fixtures, equipment, and due proceeds thereof, both cash and non-cash including insurance proceeds". *See* Motion RJT–1, Exhibit B, Docket Entry 53.

An auction sale of various assets of Debtor was conducted on April 23, 1992. Century's security interest in the inventory, fixtures, parts and accessories which were sold is not disputed and these items had an estimated value of approximately $105,000. The sale generated $400,000 which Century claims is subject to its lien. The sale included a Dealer Sales and Service Agreement between Debtor and General Motors Corporation. *See* Second Emergency Motion for ... Sale ..., Motion No. 92–SGM–3, Exhibit C, Docket Entry 13. Century claims that it is secured in the Dealer Sales and Service Agreement by virtue of the language in its security and loan agreement and financing statement granting it a security interest in Debtor's "contract rights", "accounts", and "due proceeds thereof". Pursuant to the Dealer Sales and Service Agreement, Debtor is a nonexclusive seller and servicer of GM/Division products. GM/Division provides sales and service support to "enhance the quality and competitiveness of its Products". *See* Movant's Brief in Support of Motion ..., Docket Entry 90 at 2, n. 1.

■ The objecting creditors [1] contend that the Dealer Sales and Service Agreement is a general intangible and not an account or contract right. Therefore, the objecting creditors argue, Century is not secured in the Agreement.

We agree that the Dealer Sales and Service Agreement cannot be termed an "account" or "contract right". We first note that the term "contract right" no longer has separate significance under § 9106 of the Uniform Commercial Code (hereafter "UCC") inasmuch as it is now included in the expanded definition of "account". *See* Official U.C.C. Reasons for 1972 Change, 13 Pa.Cons.Stat.Ann. § 9106. *See also In re Silicon Electro–Physics, Inc.*, 116 B.R. 44, 45 (Bankr.W.D.Pa.1990); *In re Slippery Rock Forging, Inc.*, 99 B.R. 679, 681 (Bankr.W.D.Pa.1989). *See also Lisbon Bank and Trust Co. v. Commodity Credit*

*Corp.*, 679 F.Supp. 903, 906 (N.D.Iowa 1987).

Thus, we must determine whether the language of the security agreement gives Century a security interest in the Dealer Sales and Service Agreement. The UCC defines "account" as "[a]ny right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." 13 Pa.Cons.Stat.Ann. § 9106.

In *In re Gordon Car and Truck Rental, Inc.*, 75 B.R. 466 (Bankr.N.D.N.Y.), *aff'd*, 80 B.R. 12 (N.D.N.Y.1987), the debtor operated pursuant to licenses with Avis–Rent–A–Car System, Inc., and leased the vehicles it used in its business. A creditor claimed a security interest in the licenses pursuant to an addendum in each lease providing for a security interest in "proceeds, accounts and general intangibles" arising from any vehicle lease. 75 B.R. at 467. Relying on the definition of "account" in § 9106 of the UCC, the court distinguished licenses from accounts which provide a "right to payment" pursuant to contracts for "the sale or lease of goods, or the rendition of services" which are "earned by performance under an agreement for goods sold or leased, or services rendered." 75 B.R. at 469. Because the licenses did not give a "right to payment", the creditor was not secured in the license. 75 B.R. at 469.

In affirming the bankruptcy court, the district court concluded that the definition of "account" is broad enough to include contract rights as "long as they relate to the sale or lease of goods or the rendering of services". 80 B.R. at 15. *See also In re Slippery Rock Forging, Inc.*, and *In re Silicon Electro–Physics, Inc., supra*. The district court further pointed out that, because the licenses govern "contractual rights not involving the sale or lease of goods, or the rendering of services", they

---

**1.** This case began as an involuntary chapter 7 and Debtor conceded to a voluntary chapter 11. Although only Debtor is named as a respondent in the motion, several creditors were listed as respondents in the caption of the answer to the motion at issue. These creditors are: The Auto Body Works, Auto Trim Design–PGH, Car Cleen Systems, Inc., DCL Auto Painting, The News, and Tire Center U.S.A. of Beaver Falls.

were general intangibles similar to a liquor license. 75 B.R. at 470.

General intangibles are defined in the UCC as "[a]ny personal property (including things in action) other than ... accounts...." 13 Pa.Cons.Stat.Ann. § 9106. We find this Dealer Sales and Service Agreement to be a general intangible because it does not give either party a right to payment within the meaning of the term "account" (or "contract right") as stated in § 9106. The Dealer Sales and Service Agreement in this case is more like a franchise (or license), i.e., " 'a continued undertaking between the contracting parties to cooperate in the operation of the franchised business and to insure that the license or franchise will not be infringed upon by third parties.' " 75 B.R. at 470 (citation omitted). As the bankruptcy court in *Gordon Car* noted, such an agreement is not "the norm for the sale or lease of goods or the provision of services as contemplated by the U.C.C." *Id.* at 471.[2]

■ The court is aware that there is no precise form which must be utilized to evidence a security interest. The prevailing wisdom is that a security interest is created if an adequate description is given in writing to allow identification of the collateral which constitutes the secured property, thereby putting subsequent creditors on notice that a security interest is claimed. *See Lisbon Bank and Trust Co. v. Commodity Credit Corp.*, 679 F.Supp. 903 (N.D.Iowa 1987). We also are cognizant of the fact that the Court of Appeals for the Third Circuit noted that the Pennsylvania Supreme Court has accorded substantial weight to the Comments to the UCC as evidencing the intended application of the UCC. *See, e.g., In re Bristol Associates, Inc.*, 505 F.2d 1056, 1058 at n. 2 (3d Cir. 1974).

■ The Comments to § 9106 indicate that the term "general intangible" is intended to cover miscellaneous contractual rights and does not include "account" or "contract rights". The Dealer Sales and Service Agreement at issue is a general intangible because it is not an agreement for the sale or lease of goods or the rendering of services requiring payment. *See In re Gordon Car and Truck Rental, Inc.*, 75 B.R. at 470. That is, in order for an agreement to constitute an "account" or "contract right", the right to payment must stem from the sale or lease of goods or the rendering of services. *In re Gordon Car and Truck Rental, Inc.*, 80 B.R. at 14. *See also* Drafters' Comments to § 9106. In the instant case, the contract rights and accounts to which Century's secured status extends are those which are generated by Debtor in the course of its business operations and arise only when Debtor carries out its obligation under the Dealer Sales and Service Agreement to conduct a sales and service business. There are no contract rights or accounts extant by virtue of the Dealer Sales and Service Agreement itself and the Agreement does not generate in Debtor a right to payment.

Century's security agreement provides it with a secured interest in contract rights and accounts but not in general intangibles. In light of the cases cited herein and the Comments to § 9106 of the UCC, we conclude that the Dealer Sales and Service Agreement is not a "contract right" or "account" as those terms are customarily used in commercial transactions. Further, the descriptions of the property in which a security interest is claimed, as delineated in the security agreement and financing statement (i.e., "contract rights", "accounts", and "proceeds thereof"), do not provide sufficient notice that Century claims an interest in the Dealer Sales and Service

---

**2.** In *In re Specialty Foods of Pittsburgh, Inc.*, 98 B.R. 734 (Bankr.W.D.Pa.1989), we held that a license agreement was not an account because it did not entitle Debtor to money payments, but instead gave it a right to use a trademark. In the case at bar the Dealer Sales and Service Agreement does not provide for or generate money payments, per se. Rather, it merely gives Debtor a nonexclusive right to sell and service GM/Division products, requires the Division to provide sales and service support to "enhance the quality and competitiveness of its Products" and otherwise outlines the parties' arrangement. *See* Second Emergency Motion for ... Sale, Motion No. SGM-3, Exhibit C (Dealer Sales and Service Agreement), Docket Entry 13.

Agreement. *See* 13 Pa.Cons.Stat.Ann. §§ 9110 (sufficiency of description), 9203(a)(1) (collateral description required in order to have an enforceable security interest). Had the security agreement and financing statement referred to "general intangibles", this court would conclude that it was sufficient to put Debtor's prospective lenders or creditors on notice of the claimed interest in the Dealer Sales and Service Agreement. However, having enumerated specifically neither the Dealer Sales and Service Agreement nor the more general term "general intangibles", this security agreement falls short of what is necessary to provide Century with secured status in the Dealer Sales and Service Agreement.

In conclusion, we find that the security agreement and financing statement do not indicate an agreement between Debtor and Century that Century would be paid from the proceeds of the sale of the Dealer Sales and Service Agreement. Indeed, General Motors contends that there is no value to the Dealer Sales and Service Agreement because it provides such agreements to its dealers at no charge. Although the court discounted this analysis at the sale hearing and opined that the Dealer Sales and Service Agreement is a valuable asset of the estate, General Motors' argument supports our finding that the Dealer Sales and Service Agreement was not intended or considered by the parties to be a contract right within the commercial customary usage.

Based on the foregoing, an evidentiary hearing will be scheduled to determine the allocation of the proceeds of sale to the various assets which were sold on April 23, 1992.

An appropriate order will be entered.

## ORDER

And now, to-wit, this 15 day of September, 1992, for the reasons set forth in the foregoing Memorandum Opinion, it is ORDERED that the Motion to Authorize Payment to Secured Creditor is granted in part and denied in part as follows:

1. The motion is GRANTED in that Century National Bank, the secured creditor, is authorized to receive a distribution of sale proceeds of assets in which it has the primary perfected security interest: to-wit, inventory, fixtures, parts and accessories.

2. The motion is DENIED insofar as it requests a distribution based upon the sale of the Dealer Sales and Service Agreement. Century has no perfected security interest in the Dealer Sales and Service Agreement.

In accordance with the timetable developed at the June 25, 1992, hearing on this Motion, it is ORDERED that discovery will close forty-five days from the date of this order.

It is FURTHER ORDERED that a status conference in preparation for the evidentiary hearing will take place in Courtroom 1112 of the William S. Moorhead Federal Building, 1000 Liberty Avenue, Pittsburgh, Pennsylvania, at 1:30 p.m. on November 3, 1992. At that time, the court will explore settlement, determine the witnesses to be called in the cases in chief and the length of the trial, set dates for filing stipulations of fact and a pretrial narrative, and set a date for the evidentiary hearing, if necessary.

It is FURTHER ORDERED that the Rule to Show Cause why the case should remain in chapter 11 issued in conjunction with this court's order approving conversion to chapter 11 pursuant to Motion No. SGM–2 will be discussed at the above scheduled status conference.