In re Jane E. RENSHAW, Debtor.

Jane E. Renshaw, Plaintiff,

v.

Clearview Federal Credit
Union, Defendant.

Bankruptcy No. 10–23268–BM.
Adversary No. 10–2407–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

March 14, 2011.

Thomas J. Dausch, for Jane Renshaw.

Samuel J. Pasquarelli, Pittsburgh, PA, for Clearview Federal Credit Union.

### *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Jane Renshaw, the above-captioned debtor and the instant plaintiff (hereafter

"the Debtor"), seeks to have a determination made as to the secured status of a pre-petition Visa credit card debt (hereafter "the Visa Credit Card Debt") that she owes to Clearview Federal Credit Union, the instant defendant (hereafter "Clearview").

Clearview contends that the Visa Credit Card Debt is secured by virtue of the operation of a cross-collateralization clause that is contained in a line of credit agreement that was entered into by the parties subsequent to that agreement which resulted in the Visa Credit Card Debt. The Debtor, on the other hand, contends that such cross-collateralization clause does not operate such that the Visa Credit Card Debt is secured.

The Debtor now moves for summary judgment. The parties stipulated at the February 2, 2011 hearing on the Debtor's motion that if the aforesaid cross-collateralization clause operates in the manner as contended by Clearview, then (a) the Visa Credit Card Debt is secured, and (b) the Court may resolve the instant adversary proceeding by entering a summary judgment in favor of Clearview. For the reasons that are set forth below, the Court (a) holds that the Visa Credit Card Debt is secured, (b) shall deny the Debtor's summary judgment motion, and (c) shall enter summary judgment in the instant adversary proceeding in favor of Clearview.

### STATEMENT OF FACTS

The Debtor filed a Chapter 7 bankruptcy petition on May 3, 2010. In the Debtor's Bankruptcy Schedule F, she indicates that she owes $4,861.56 on the Visa Credit Card Debt, and that such debt is unsecured. The Debtor obtained the Visa Credit Card Debt from Clearview on September 18, 1984.

In her Bankruptcy Schedule D, the Debtor indicates that she owes another debt to Clearview for $3,218.35, which other debt she concedes is secured. This other debt owed to Clearview stems from the Debtor's May 7, 2009 purchase of a 2000 Volvo automobile (hereafter "the 2009 Car Loan"). The Debtor financed the purchase of such automobile (hereafter "the Debtor's Volvo") with funds that she obtained by drawing down on an open line of credit that she had previously obtained from Clearview on September 25, 1995 (hereafter "the 1995 Line of Credit").

The parties' agreement whereby the Debtor obtained the 1995 Line of Credit includes a security agreement (hereafter "the 1995 Line of Credit Security Agreement") which provides, *inter alia*, that "[p]roperty you give as security [for any loan obtained under the 1995 Line of Credit] will secure all amounts owed under the Plan [ (i.e., any and all loans obtained via the 1995 Line of Credit)] *and all other loans you have with us [ (i.e., Clearview)] now* or in the future" (emphasis added).

The parties agree that the 2009 Car Loan, since it was obtained by virtue of the Debtor's drawing down on the 1995 Line of Credit, is secured by the Debtor's Volvo. The parties disagree as to whether the Debtor's Volvo also secures the Visa Credit Card Debt.

### DISCUSSION

According to the language from the 1995 Line of Credit Security Agreement that is reprinted and italicized above, which language the Court finds to be clear and unambiguous, any security interest that the Debtor grants to secure a loan that the Debtor obtains under the 1995 Line of Credit will also secure any loan that the Debtor already had with Clearview on September 25, 1995 (i.e., the date when the Debtor obtained the 1995 Line of Credit). In reliance on such language, and because

the Debtor's Volvo secures a loan that was obtained under the 1995 Line of Credit (i.e., the 2009 Car Loan), Clearview argues that the Debtor's Volvo shall also secure the Visa Credit Card Debt.

Cross-collateralization language such as the foregoing from the 1995 Line of Credit Security Agreement that is relied upon by Clearview is commonly referred to as a "dragnet" clause. *See In re Fassinger,* 246 B.R. 513, 517 (Bankr.W.D.Pa.2000) (citing *In re Shapiro,* 109 B.R. 127, 128 & 132 (Bankr.E.D.Pa.1990), for the point that "[a] dragnet clause may purport to embrace either past indebtedness of the obligor to the obligee, or future indebtedness of the obligor to the obligee, or both"). The Court shall henceforth refer to the dragnet clause found in the 1995 Line of Credit Security Agreement as "the Dragnet Clause."

The Debtor contends that the Dragnet Clause cannot be enforced such that the Debtor's Volvo secures the Visa Credit Card Debt. In her complaint the Debtor contends as much on the ground that (a) dragnet clauses, as a matter of Pennsylvania law, are subjected to what is called the "relatedness rule," and (b) the Dragnet Clause, when applied to the Visa Credit Card Debt, does not satisfy such rule. The "relatedness rule" essentially provides that a dragnet clause will be enforceable only if the indebtedness sought to be covered under such clause is (a) of the same class as the primary obligation (i.e., the debt in connection with which the security agreement that contains said dragnet clause is executed), and (b) so related to such primary obligation that the consent of the debtor to its inclusion under said clause may be inferred. *See Fassinger,* 246 B.R. at 521.

The Debtor contends in her complaint that (a) the Visa Credit Card Debt is not of the same class as the 2009 Car Loan, and (b) the Dragnet Clause, when applied to the Visa Credit Card Debt, thus does not satisfy the "relatedness rule." The Court agrees with such contentions by the Debtor. The Court also agrees with the Debtor that, as a matter of Pennsylvania law, dragnet clauses have fairly uniformly been subjected to the "relatedness rule," both in the Article 9 security interest and non-Article 9 encumbrance context.

■ However, the Uniform Commercial Code (UCC) was substantially revised in 2001, to be effective July 1, 2001, *see* 13 Pa.C.S.A. § 9701 (Purdon's 2011), and among those provisions that were revised is that which, with respect to Pennsylvania's version of the UCC, is found at 13 Pa.C.S.A. § 9204(c). The Official UCC and Pennsylvania Comments to revised § 9204(c) make clear that the revision of § 9204(c) [1] operates to "abrogate[ ] the 'relatedness rule' applied by some courts under former [UCC] Article 9," 13 Pa.C.S.A. § 9204(c) Pa. cmt.; *see also* 15 West's Pa. Forms, *Commercial Transactions* § 9204 Form 1 (2011) notes cmt. (last ¶) (2010) (same), and thereby serves to reject the holdings of cases such as, for instance, *Fassinger,* at least to the extent that such prior decisions subjected a dragnet clause involving an Article 9 security interest to the "relatedness rule," *see* 13 Pa.C.S.A. § 9204(c) U.C.C. cmt. 5 & Pa. cmt.; 15 West's Pa. Forms, *Commercial Transactions* § 9204 Form 1 (2011) notes cmt. (last ¶) (2010). "While the comments [to the UCC] are not binding, both the Third Circuit Court of Appeals and the Pennsylvania Supreme Court have given the com-

---

**1.** 13 Pa.C.S.A. § 9204(c) provides that "[a] security agreement may provide that collateral secures ... future advances or other value, whether or not the advances or value are given pursuant to commitment." 13 Pa. C.S.A. § 9204(c) (Purdon's 2011).

ments substantial weight in interpreting the legislative intent of the Uniform Commercial Code." *In re Taylor,* 45 B.R. 643, 646 (Bankr.M.D.Pa.1985); *see also In re PA Record Outlet, Inc.,* 92 B.R. 139, 140 (Bankr.W.D.Pa.1988) (same); *In re Scheidmantel Olds–Cadillac, Inc.,* 144 B.R. 296, 298 (Bankr.W.D.Pa.1992) (same). Therefore, this Court construes revised § 9204(c) consistent with the two comments to § 9204(c) such that, when revised § 9204(c) is to be applied in resolving a given matter, a dragnet clause involving an Article 9 security interest is no longer to be subjected to the "relatedness rule." At the February 2, 2011 hearing on the Debtor's motion, the Court understood the Debtor to even concede as much.

■ Because the instant matter involves the application of the Dragnet Clause to an Article 9 security interest in the Debtor's Volvo, the Dragnet Clause is not to be subjected to the "relatedness rule," provided, of course, that the revised version of § 9204(c) is to be applied to resolve the instant matter. The Court also holds, and the Court understands the Debtor to agree, that, if the Dragnet Clause shall not be subjected to the "relatedness rule," then such clause does indeed operate in the manner suggested by Clearview, that is so that the Debtor's Volvo shall also secure the Visa Credit Card Debt. Therefore, the remaining question to be answered is whether revised § 9204(c) rather than the old version thereof is to be applied to the instant matter.

The Debtor contends that to apply revised § 9204(c) to the instant matter would constitute a retroactive application of such statutory provision, which retroactive application the Debtor argues would be improper because it would serve to impair substantive rights of the Debtor. The substantive rights to which the Debtor refers appear to consist solely of the right—

if there legally is one—to have the old (i.e., pre–2001) version of § 9204(c) applied when considering the enforcement of the Dragnet Clause. The Debtor contends that such right exists because the old version of § 9204(c) existed in 1995 when the 1995 Line of Credit Security Agreement (which contains the Dragnet Clause) was executed between the parties, and so, argues the Debtor, such law operates to establish the rights of the parties vis-a-vis the Dragnet Clause.

■ "A law is ... retroactive in its application when it relates back and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired." *Stroback v. Camaioni,* 449 Pa.Super. 395, 674 A.2d 257, 260 (1996). Furthermore, "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S.A. § 1926 (Purdon's 2011); *see also Brangs v. Brangs,* 407 Pa.Super. 43, 595 A.2d 115, 118 (1991) ("Our courts have repeatedly interpreted ... [§ 1926] as creating a strong presumption of prospective statutory application only, absent clear language to the contrary"); *Stroback,* 674 A.2d at 260 (same).

The Court can accept that to apply the revised § 9204(c) to the instant matter would constitute a retroactive application of such statutory provision (a) because, if such revised version were applied, then the Dragnet Clause would not be subjected to the "relatedness rule," and (b) since, if the old version of § 9204(c) were to be applied instead, then the Dragnet Clause would be so subjected. However, and unfortunately for the Debtor, the presumption against retroactive application of revised § 9204(c) is overridden by 13 Pa.C.S.A. § 9702. 13 Pa.C.S.A. § 9702 provides, in pertinent part, that:

(a) Pre-effective date transactions or liens.—Except as otherwise provided in this chapter, Revised Division 9[ of Pennsylvania's UCC, including revised § 9204(c),] applies to a transaction or lien within its scope even if the transaction or lien was entered into or created before the effective date of Revised Division 9.

. . .

(c) Pre-effective date proceedings.—Revised Division 9 does not affect an action, case or proceeding commenced before the effective date of Revised Division 9.

13 Pa.C.S.A. 9702 (Purdon's 2011). Applying § 9702 to the instant adversary proceeding, and because the instant adversary proceeding was not commenced until July 14, 2010, which date is substantially subsequent to the July 1, 2001 effective date of Pennsylvania's Revised Article 9, revised § 9204(c) must be applied to the Dragnet Clause despite the fact that it comprises part of a contract that was executed between the parties prior to July 1, 2001.[2]

2. Because § 9702 expressly provides for the retroactive application of revised § 9204(c) in the instant matter, the Court need not resolve whether, as the Debtor contends, such retroactive application would operate to impair any substantive right that she might possess, via contract or otherwise, to have the old (i.e., pre–2001) version of § 9204(c) applied when considering the enforcement of the Dragnet Clause. However, the Court nevertheless holds, for the reasons set forth below, that such retroactive application will not operate to impair any such substantive right of the Debtor.

As an initial matter, "Pennsylvania law specifically protects vested interests from being extinguished by subsequent legislation." *Pennsylvania Medical Society v. Dept. of Public Welfare*, 994 A.2d 33, 44 (Pa.Cmwlth.Ct. 2010). However, only vested rights are so protected. *See Lewis v. Pennsylvania R. Co.*, 220 Pa. 317, 69 A. 821, 823 (1908). Therefore, does the Debtor possess a vested right in having the old (i.e., pre–2001) version of § 9204(c) applied when considering the enforcement of the Dragnet Clause? As set forth below, for two reasons the Court holds that the Debtor does not have such a vested right.

First, such retroactive application of revised § 9204(c) will not serve to impair the Debtor's vested rights under the 1995 Line of Credit Security Agreement (which contains the Dragnet Clause) because (a) such contract provides for cross-collateralization via the Dragnet Clause irrespective of whether such cross-collateralization would satisfy the "relatedness rule" and the old version of § 9204(c), and (b) such retroactive application of revised § 9204(c) enables rather than prevents such cross-collateralization. In the course of holding as the Court does, the Court rejects the Debtor's contention that (a) the old version of § 9204(c) that existed in 1995 operates to establish the rights of the parties vis-a-vis the Dragnet Clause, and (b) such version of § 9204(c) so operates merely because such law existed when the 1995 Line of Credit Security Agreement was executed between the parties. The Court rejects such contention by the Debtor (a) because, although "the law applicable to a contract is [generally also] a part of the contract," 12 P.L.E.2d *Contracts* § 163 (Bender 2001), "[o]ne plain and obvious exception to this broad principle is where the contract discloses a contrary intention," *Halderman v. Pennhurst State School & Hospital*, 901 F.2d 311, 322 (3rd Cir.1990); *see also W.G. Nichols, Inc. v. Ferguson*, 2004 WL 868222 at *8 (E.D.Pa.2004) (same); 12 P.L.E.2d *Contracts* § 163 (same), and (b) since the parties' insertion of the Dragnet Clause into the 1995 Line of Credit Security Agreement evidences the parties' intention to allow for cross-collateralization regardless of whether an application of the Dragnet Clause would satisfy then-existing law in the form of the "relatedness rule" and the old version of § 9204(c).

Second, such retroactive application of revised § 9204(c) will not serve to improperly deprive the Debtor of any defense—predicated upon the "relatedness rule" and the old version of § 9204(c)—that she would have to any cause of action that Clearview possesses that is predicated upon the security interest that it obtained in the Debtor's Volvo via the Dragnet Clause. "Accrued causes of action constitute vested rights," *Hospital & Healthsystem Association of Pennsylvania v. Com-*

Because revised § 9204(c) must be applied to the Dragnet Clause, such clause shall not be subjected to the "relatedness rule." Therefore, as set forth above, such clause operates such that the Debtor's Volvo shall secure the Visa Credit Card Debt. Because the Visa Credit Card Debt is so secured, the Court shall (a) deny the Debtor's summary judgment motion, and (b) enter summary judgment in the instant adversary proceeding in favor of Clearview.

### CONCLUSION

For all of the foregoing reasons, the Visa Credit Card Debt is secured by the Debtor's Volvo. Therefore, the Court shall (a) deny the Debtor's summary judgment motion, and (b) enter summary judgment in the instant adversary proceeding in favor of Clearview.

### ORDER OF COURT

AND NOW, this **14th day** of **March, 2011,** for the reasons set forth in the accompanying Memorandum Opinion of the same date; and subsequent to notice and a hearing on the matter that was held on February 2, 2011, it is **hereby ORDERED, ADJUDGED, AND DECREED** that:

(a) the summary judgment motion of Jane Renshaw, the instant debtor and plaintiff (hereafter "the Debtor"), is **DENIED WITH PREJUDICE;**

(b) **summary judgment** in the instant adversary proceeding is **ENTERED** in favor of Clearview Federal Credit Union, the instant defendant (hereafter "Clearview"); and

(c) the Debtor's Visa Credit Card Debt that is owed to Clearview is thus secured by the Debtor's 2000 Volvo.

*monwealth,* 997 A.2d 392, 399 (Pa.Cmwlth.Ct. 2010); *see also Lewis,* 69 A. at 823 (same), as does the ability to rely on the law in existence when such cause of action accrues, *see Id.* Defenses to accrued causes of action, that is accrued defenses, also constitute vested rights, as does the ability to rely on the law in existence when such defense accrues. *See Id.* However, corollaries of the foregoing are that (a) a defense that has not yet accrued, that is a defense to a cause of action that has not yet accrued, does not constitute a vested right, and (b) the ability to rely on the law in existence prior to when such defense accrues also does not constitute a vested right. Accordingly, if Clearview possessed a cause of action predicated upon the aforesaid security interest that accrued prior to July 1, 2001 (i.e., the effective date of revised § 9204(c)), then the Debtor would have a vested right to assert a defense to such cause of action predicated upon the "relatedness rule" and the old version of § 9204(c). However, if any such cause of action could only have accrued subsequent to July 1, 2001, then the Debtor would not have a vested right to assert a defense to such cause of action predicated upon the "relatedness rule" and the old version of § 9204(c). A cause of action for Clearview vis-a-vis the security interest that it obtained in the Debtor's Volvo via the Dragnet Clause could not have accrued until Clearview first obtained such security interest. Unfortunately for the Debtor, Clearview could not have obtained such security interest before May 7, 2009, which is when the Debtor acquired rights in the Debtor's Volvo. *See* 13 Pa.C.S.A. § 9203(b)(2) (Purdon's 2011) ("a security interest is enforceable ... only if ... [t]he debtor has rights in the collateral"). Therefore, a cause of action for Clearview vis-a-vis such security interest could not have accrued before May 7, 2009, that is until after July 1, 2001, which means that the Debtor does not have a vested right to assert a defense to such cause of action predicated upon the "relatedness rule" and the old version of § 9204(c).