L. J. W. Realty Corp., Appellant, *v.* Philadelphia.

198

Argued April 23, 1957.   Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Norman S. Berson,* with him *Samuel D. Goodis,* and *Folz, Bard, Kamsler, Goodis & Greenfield,* for appellant.

*Dunstan McNichol,* with him *Gilfillan, Gilpin & Brehman,* for appellant.

*Charles M. Solomon,* with him *J. Victor O'Brien* and *Fox, Rothschild, O'Brien & Frankel,* for appellant.

*David Berger,* City Solicitor, with him *Leonard B. Rosenthal* and *Jacob J. Siegal,* Assistant City Solicitors, for appellee.

*Edward Friedman,* Deputy Attorney General, and *Thomas D. McBride,* Attorney General, filed a brief for the Commonwealth as amicus curiae.

OPINION BY MR. JUSTICE COHEN, September 30, 1957:

The Act of August 5, 1932, P. L. 45, §1, 53 P.S. §4613 (Supp.) (Sterling Act) gives to the City of Philadelphia extensive authority to tax transactions, privileges, subjects and personal property within the limits of the City. In 1937 the City Council of Philadelphia, pursuant to this Act, passed an ordinance "imposing a stamp tax upon certain *transactions* relating to documents and obligations. . . ." (Emphasis throughout supplied). The ordinance provided that "Every person who makes, executes, issues, or delivers any document . . . shall be subject to pay for, and in respect to such document, or for and in respect of the vellum, parchment or paper upon which such docu-

ment is written or printed, a tax at the rate of five (5) cents for each one hundred (100) dollars, or fraction thereof, of the value represented by such document."

In *City Stores Co. v. Philadelphia,* 376 Pa. 482, 103 A. 2d 664 (1954) we said that this ordinance imposed a tax on a *"transaction"* pertaining to real estate. Since "the only transaction *'referred to* . . . is the making, execution, issuing and delivering of the instrument of title, . . . it was therefore upon those operations that the tax was imposed. . . ." 376 Pa. at 488. But because in that case deeds were executed and delivered outside the city limits, it was held that the "transaction did not fall within the compass of the ordinance and the tax was accordingly avoided." 376 Pa. at 488.

On December 9, 1952, the city replaced this 1937 transactions tax with a new realty transfer tax which provided for a levy of 1% on the value of the property represented by a deed subject to the provisions of the ordinance. The principal change introduced in the ordinance was the inclusion of a provision prohibiting the recording of documents subject to the tax in the office of the recorder of deeds unless required tax stamps had been affixed thereto. In *Philadelphia Appeal,* 383 Pa. 428, 119 A. 2d 205 (1956), we held that a deed executed, acknowledged, delivered and accepted in New York was not taxable under this ordinance. The new section "was merely an enforcement provision and added nothing to the scope of the tax; it did not make the recording of the deed itself a taxable transaction." 383 Pa. at 433.

The Philadelphia City Council again tried to close the loophole which existed in both the 1937 and 1952 ordinances. On December 7, 1954, after the publication of the decision in the *City Stores Co.* case, Council amended the 1952 ordinance by providing that the

term "deliver"[1] should include the presentation for re cording within the City of Philadelphia of any docu ment whereby title to or any interest in real property located within the city was transferred or conveyed, regardless of where the document was executed, de livered or accepted, thereby bringing the transaction of recording the deed within the scope of the taxing pro vision and apparently remedying the situation which the 1952 amendment had failed to cure.

After the effective date of this ordinance the L. J. W. Realty Corp., Lit Bros., Inc., and American Stores Co. individually acquired real estate situated in Phila delphia by deeds executed and accepted outside the Commonwealth. The several deeds were presented for recording in the Department of Records, City Hall, Philadelphia, but the Commissioner refused to accept the deeds unless the Philadelphia Realty Transfer Tax Stamps in appropriate amounts were affixed. The ap pellants thereupon purchased and affixed the required tax stamps under protest and applied to the Revenue Commissioner for refunds upon the theory that the tax was invalid, being a duplication of existing state taxes. The Revenue Commissioner refused their claims as did the Tax Review Board on appeal.[2]

Further appeals were then taken to the Court of Common Pleas No. 7 of Philadelphia County en banc which upheld the validity of the taxing ordinance and sustained the action of the board in denying the re-

---

[1] The act also re-defines "document" as: "any deed . . . where by any lands . . . situate within this city, shall be granted, bar gained, sold, or otherwise conveyed to any grantee, purchaser or any other person, which shall be presented for recording within the city. . . ."

[2] The Tax Review Board refused to pass upon the validity of the ordinance and determined only that the taxes were properly imposed upon the three companies under the terms of the ordinance.

quest for refunds. From this decision, the three taxpayers have taken the present appeals.

The first contention of the appellants is that the transaction taxed by the city in all three cases—presentation of a deed for recording—is already the subject of a fifty cent tax imposed by the Commonwealth under the Act of April 6, 1830, P. L. 272, 72 P.S. §3171. Section one of the Sterling Act prohibits the City of Philadelphia from taxing "a privilege, transaction, subject . . . or . . . personal property which is now . . . subject to a State tax or license fee." Consequently, the appellants urge the Commonwealth's tax operated to prohibit the city from imposing a similar tax.

We have already declared that both the 1937[3] and the 1952[4] ordinances levied taxes on certain *transactions* pertaining to real estate. The 1954 amendatory ordinance in no way affected the type of tax imposed. It merely broadened the scope of the ordinance by expending the definition of "delivery" to include the presentation of a deed for recording. See *Philadelphia Appeal*, supra, 383 Pa. at 433. Hence, the Philadelphia ordinance continues to impose a "transaction" tax. Does the Act of 1830 impose a similar tax?

Section 4 of the Act of 1830 provides: "the several recorders of deeds shall demand and receive for every deed, and for every mortgage or other instrument in writing offered to be recorded, fifty cents." The appellants fail to recognize that the incidence of this state tax differs from the tax imposed by the City. The Act of 1830 does not levy a tax upon a *transaction* (presentation of a deed for recording); it does by its

---

[3] *City Stores Co. v. Philadelphia*, 376 Pa. 482, 103 A. 2d 664 (1954).

[4] *Philadelphia Appeal*, 383 Pa. 428, 119 A. 2d 205 (1956).

terms levy a tax upon the *document* itself which is being recorded.

That the tax payment is made for the *document* rather than the *transaction* is borne out by the administrative interpretation of the state act as evidenced by the tax receipt records of the Commonwealth. The 1957 budget, and previous budgets, lists the proceeds from this tax as revenues from a "Tax on Legal Documents."[5] We have said the administrative interpretation of a taxing statute is controlling unless clearly erroneous. *Federal Dep. Insur. Corp. v. Board of Finance and Revenue,* 368 Pa. 463, 471, 84 A. 2d 495 (1951). Our view of the matter is also confirmed by the references to this Act in opinions of the Attorneys General[6] of the Commonwealth as imposing a tax upon documents. See, for example, Opinions of the Attorneys General, 10 Dauph. 113 (1907); 57 D. & C. 335 (1946). See also *Cone v. Donaldson,* 47 Pa. 363 (1864). We conclude, therefore, that the Act of 1830 does not invoke the operation of section one of the Sterling Act to invalidate the Philadelphia Realty Transfer Tax.

The second theory advanced by the appellants is that the State Realty Transfer Tax Act of December 27, 1951, P. L. 1742, as amended, 72 P.S. §§3283-3292 (Supp.), duplicated the Philadelphia Realty Transfer Tax, and that, therefore, under the Sterling Act the city lost its right to continue its levy.

The State Realty Transfer Tax imposes a one percent tax upon the presentation for recording of a deed to real estate situated in the Commonwealth irrespec-

---

[5] The General Fund Budget for the Biennium June 1, 1957 to May 31, 1959, page 186. On page 185 of the same budget the revenue from the State Realty Transfer Tax, similar in all respects to the city tax, is referred to as "Realty Transfer Tax."

[6] This is also the position of the Commonwealth as Amicus Curiae in the present proceeding.

tive of where the deed was executed, delivered or accepted. However, section eleven of the act provides: "Notwithstanding anything contained in any law to the contrary, the validity of any . . . ordinance . . . now or hereafter enacted or adopted by the Commonwealth or any political subdivision thereof, providing for or relating to the imposition, levy or collection of any tax, shall not be affected or impaired by anything contained in this act." This saving clause permits the continued levying of the Philadelphia tax which otherwise clearly would have been prohibited by operation of the Sterling Act. The appellants urge, however, that the saving clause was enacted in violation of Article III, section 6, of the Pennsylvania Constitution and that, therefore, the Sterling Act remains effective to nullify the city tax.

Article III, section 6 of the Constitution provides: "No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length." Appellants argue that section eleven of the state tax which permits municipalities to tax a transaction concurrently with the state in effect amended the Sterling Act, without complying with the provisions of Article III, section 6.

The position of the appellants is untenable. We grant that the State Realty Transfer Tax has an indirect effect upon the Sterling Act; but it also affects the "tax anything" act of 1947.[7] The State Realty Transfer Tax also imposes additional duties and responsibilities upon the recorders of deeds and the sheriffs of the Commonwealth and hence, affects, modifies

---

[7] Act of June 25, 1947, P. L. 1145, as amended, 53 P.S. §§2015.1-2015.9 (Supp.).

and amends all the various acts pertaining to those two officials. "The constitution does not make the obviously impracticable requirement that every act shall recite all other acts that its operation may incidentally affect, either by way of repeal, modification, extension or supply." *Searight's Estate, Stuart's Appeal,* 163 Pa. 210, 217, 29 Atl. 800 (1894). *Accord: Gallagher v. MacLean,* 193 Pa. 583, 587, 45 Atl. 76 (1899).

The purpose of section 6 of the Constitution, along with other provisions pertaining to legislation in Article III of the Constitution, was to provide full notice and publicity to all proposed legislative enactments, and thus to prevent the passage of "sneak" legislation. As long ago as the *Greenfield Avenue* case, 191 Pa. 290, 296-297, 43 Atl. 225 (1899) we said that "an act which is complete in itself—the purpose, meaning and full scope of which are apparent on its face—is valid, [and not violative of Article III, section 6], although it may operate to alter, extend or repeal a prior act . . . ." *Accord: Leinbach's Estate,* 241 Pa. 32, 36, 88 Atl. 67 (1913).

There is no doubt that the Commonwealth's Realty Transfer Tax Act is a complete enactment imposing a tax upon transfers of real estate situated within the Commonwealth, and its purpose, meaning and scope are clearly apparent on its face. There was, consequently, no necessity to follow the procedure outlined in Article III, section 6, and republish all prior legislation which may have been indirectly amended or affected. No act or portion thereof should be declared unconstitutional unless "it violates the Constitution clearly, palpably plainly; and in such manner as to leave no doubt or hesitation in our minds." *Kelley v. Baldwin,* 319 Pa. 53, 54, 179 Atl. 736 (1935) ; *Sablosky v. Messner,* 372 Pa. 47, 59, 92 A. 2d 411 (1952). The appellants have failed to discharge the heavy burden

placed upon them to overcome this strong presumption of constitutionality accorded section 11 of the State Realty Transfer Tax Act.[8]

Judgment affirmed.

---

[8] The appellants further urge that the amendatory effect of the saving clause provision in the State Realty Transfer Tax Act renders the act violative of Article III, section 3, of the Pennsylvania Constitution, for the reason that the act thereby contains more than one subject and its contents are not clearly expressed in its title. "It is unnecessary to elaborate upon the oft-repeated principle that all the Constitution requires is that the title should put persons of a reasonably inquiring state of mind on notice of the general subject matter of the act. The incidental provisions of the statute need not be enumerated or indexed in the title if they are germane to the legislation as a whole. 'Unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill, the act should not be declared as a violation of the Constitution by reason of its title offending Section 3 of Article III.'" *Gumpert's Estate*, 343 Pa. 405, 407, 23 A. 2d 479 (1942).