## Pittsburgh v. N. & L. Realty Corp.

*J. Frank McKenna*, City Solicitor, and *David Stahl*, Assistant City Solicitor, for plaintiff.

*A. Sieber Hollinger* and *Reed, Smith, Shaw & McClay*, for defendant.

DUFF, J., December 9, 1957.—The City of Pittsburgh brought this action in assumpsit against the N. & L. Realty Corporation, a New York corporation duly qualified to do business in the Commonwealth of

Pennsylvania, to recover the sum of $33,640.65, plus penalty and interest, claimed to be due the city as taxes arising upon the transfer of real property situate in the city.

Defendant filed preliminary objections to plaintiff's claim, which were withdrawn when counsel for both parties agreed upon the facts and questions of law involved in the case and submitted the determination of the issue to the court.

The stipulation indicates that N. & L. Realty Company and Eisner & Lubin Foundation were owners in common of the Clark Building, situate at no. 717 Liberty Avenue, in the City of Pittsburgh, the realty company owning an undivided three-fourths interest in the property and the foundation an undivided one-fourth interest.

The agreement of sale of the Clark Building was executed and delivered in New York City and the deed dated July 30, 1956, conveying the property, was likewise made, executed and delivered by the grantors to the grantee in the said city, as was payment of the consideration in the amount $3,364,065.23 for said conveyance, of which amount defendant was entitled to the sum of $2,523,048.75.

The City of Pittsburgh enacted a real estate transfer tax by Ordinance 502, approved December 30, 1955, as amended by an ordinance which was approved January 31, 1956, which ordinance imposed a tax on transfers of real estate situate within the city.

Section 2 of said ordinance, as amended, provides as follows:

"SECTION 2. *Imposition of Tax.* A tax is hereby imposed on the transfer of real property situate within the City of Pittsburgh, or any interest therein, regardless of where the instruments making the transfers are made, executed or delivered or where the actual settlements on such transfers take place. On and after

the effective date of this Ordinance, every person who makes, executes, issues and delivers any document, or in whose behalf any document is made, executed, issued and delivered, shall be subject to pay a tax of one percent (1%) of the value of the property represented by such document, which tax shall be payable at the time of making, execution, issuance or delivery of such document. Where any lands, tenements or hereditaments are situate partly within and partly without the boundaries of the City of Pittsburgh, the tax shall be paid on the value of the portion of the lands, tenements or hereditaments situate within the City of Pittsburgh."

This ordinance was passed pursuant to the Act of Assembly of June 25, 1947, P. L. 1145, as amended by the Act of June 28, 1955, P. L. 197, and by the Act of January 31, 1956, P. L. (1955) 971, the pertinent provisions of which are as follows:

"The duly constituted authorities of the following political subdivisions, cities of the second class, cities of the second class A, cities of the third class, boroughs, towns, townships of the first class, school districts of the second class, school districts of the third class and school districts of the fourth class may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine to be paid by the transferor or transferee as determined by the taxing authority upon the transfer of real property or of any interest in real property, situate within such political subdivisions regardless of where the instruments making the transfers are made, executed or delivered or where the actual settlements on such transfers take place and on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions."

The questions of law involved are:

(1) Is the city empowered to impose its real estate transfer tax in this case under the facts stipulated by the parties?

(2) If the court answers the first question in the affirmative, is the City of Pittsburgh entitled to recover the full amount of its claim from defendant corporation, or an amount equal to only three-fourths of its claim?

Defendant contends that the ordinance as applied to defendant violates the Fourteenth Amendment of the United States Constitution and article I, sec. 9, of the Pennsylvania Constitution in that the deed was made, executed and delivered in New York City and, therefore, that the tax is an exaction upon a transaction not within the taxing power of the Commonwealth or of its political divisions.

The power of a State to subject to taxation tangible property situate within the State or rights exercisible in said property has been firmly established by decisions of the Supreme Court of the United States, whether the tax is in the nature of a direct tax or an excise tax: Frick v. Pennsylvania, 268 U. S. 473; Savings and Loan Society v. Multonah County, 169 U. S. 421; Wisconsin v. J. C. Penny Co., 311 U. S. 435.

The tax here is an excise tax imposed upon the transfer of property within jurisdiction of the city, which is duly empowered by said act of the General Assembly to make such exaction. The incidence of the tax is upon the transfer of property situate within the city.

Under the decisions, the essential fact is the situs of the property; the fact that transactions giving rise to the conveyance occurred beyond the State in no wise affects the validity of the tax.

The State Realty Transfer Tax Act of December 27, 1951, P. L. 1742, as amended, 72 PS §3283-3292, which

imposes a tax upon the presentation for recording of any deed to real estate situate in the Commonwealth, irrespective of where the deed was executed, delivered or accepted, was held to be constitutional by our Supreme Court: Sablosky v. Messner, 372 Pa. 47. See also L. J. W. Realty Corporation v. Philadelphia, 390 Pa. 197, wherein the court stated, page 205:

"There is no doubt that the Commonwealth's Realty Transfer Tax Act is a complete enactment imposing a tax upon transfers of real estate situated within the Commonwealth."

The decisions in the cases of City Stores Co. v. Philadelphia, 376 Pa. 482, and Philadelphia Appeal, 383 Pa. 428, cited by defendant, are not apposite since the ordinance of the City of Philadelphia there in question did not fall within the scope of the so-called Sterling Act of August 5, 1932, P. L. 45, 53 PS §4613, which authorizes the levy of taxes on "persons, transactions, occupations, privileges, subjects and personal property within the limits of such city": L. J. W. Realty Corp. v. Philadelphia, supra.

We conclude that the tax here challenged does not violate the Fourteenth Amendment of the Federal Constitution or the provisions of article I, sec. 9, of the Pennsylvania Constitution.

As to the second question of law, the city maintains that defendant owes the full amount of the tax without regard to the fact that defendant owned only a three-fourth interest in the property. It argues that the words in the ordinance "interest in the land" relate to the quality and not the quantity of the estate, that the identification of the person liable for the tax does not limit the amount of tax liability to the quantitive ratio of the grantor's ownership and finally, that the common law rule respecting the liability of tenants in common for taxes is applicable and that each tenant here is liable for the full amount of the tax.

The ordinance provides that "a tax is imposed on the transfer of real property situate within the City, or any interest therein" and that "every person who makes, issues and delivers any document . . . shall be subject to pay a tax of (1%) percent of the value of the property represented by the document."

Patently, the intention expressed in the ordinance is to impose a tax upon any transfer of an interest in real property, whether made by life tenant, tenant in fee simple or by the owner of an easement or other interest in the land.

There can be no doubt that, if defendant had by separate deed conveyed its three-fourths interest in this property for a proportionate share of the consideration, it would have been liable only for one percent of said consideration even though the co-tenant simultaneously executed a separate deed transferring the other one-fourth interest for a consideration amounting to one-fourth of said consideration.

If the city's interpretation, as represented by its first two contentions regarding the qualitative interest of the grantor, is correct, the conclusion is unescapable that the ordinance intends that any joint grantor of an interest in land is legally bound to pay the full amount of the tax, however disproportionate his interest is.

Either the provision that "every person is subject to a tax of one (1%) per cent of the value of property represented by the document" makes the value of the property relative to each grantor in a joint deed, three-fourths in this defendant's case, or permits the city, at its option, to compel such grantor to pay a tax of one percent of the total consideration.

The construction contended for by the city cannot be adopted since it is oppressive and is violative of the enabling statute upon which the ordinance is based. The statute allows the city to impose a tax as a direct

personal obligation of the transferor or the transferee, as the city may elect. Manifestly, the tax, when imposed against the transferor, is measured by the interest of the transferor. The statute does not provide that, if there are two or more transferors, the entire tax may be collected from any one of them. Nothing short of an express provision in the statute would impel us to adopt this interpretation.

Accordingly, we hold that the ordinance imposes upon a transferor a tax of one percent of the value of his interest in the land conveyed and, therefore, the mere joinder of a co-owner of land in a joint deed conveying the entire interest in the land cannot operate to make the owner of an undivided interest liable for the full amount of the tax.

This disposition of the question renders unnecessary the discussion of the city's further contention that defendant, as a tenant in common, is liable as at the common law for the full amount of taxes as imposed upon the joint estate.

We conclude that the City of Pittsburgh is entitled to recover the sum of $25,230.41, plus penalty and interest, that is, three-fourths of the full tax, plus penalty and interest due under the said ordinance, and judgment will be entered accordingly.

### Order

And now, to wit, December 9, 1957, judgment is entered in favor of the City of Pittsburgh, plaintiff, and against N. & L. Realty Corporation, defendant, in the sum of $25,230.49, plus interest and penalties, as provided in the City's Ordinance No. 502 of 1955, as amended.

Eo die, exception noted to N. & L. Realty Corporation, defendant, and bill of exception sealed.

Eo die, exception noted to the City of Pittsburgh, plaintiff, and bill of exception sealed.