## Commonwealth v. Grasavage

*Thomas F. Burke,* for appellant.

*James Lenahan Brown,* for Commonwealth.

SCHIFFMAN, J., January 30, 1962.—This is an appeal by Edward J. Grasavage from the suspension of his privilege to operate a Pennsylvania Official Motor Vehicle Inspection Station. This suspension by the Secretary of Revenue of the Commonwealth of Pennsylvania was based on an alleged violation of section 834, subsec. "f", of The Vehicle Code of April 29, 1959, P. L. 58. The applicable provision is as follows:

"If the secretary finds that the provisions of this act, or the directions of the secretary, are not being complied with, or that the business of such stations in connection with such inspections is being improperly conducted, he may suspend the designation of any such station."

Edward J. Grasavage, appellant, had been authorized to operate an official inspection station no. 7392 under the name of Tulsa Service Station located at 294-96 South Main Street, in Pittston, Luzerne County, Pa. Appellant's inspection station certificate was previously revoked after an arrest for gambling and a plea of guilty thereon filed to no. 242, July sessions 1959.

On July 12, 1961, a State Police detail arrested appellant, alleging gambling on the premises where the aforementioned inspection station was located.

Appellant pleaded guilty to the charge of pool selling and bookmaking before the Court of Quarter Sessions of Luzerne County. After a departmental hearing, the Bureau of Traffic Safety by letter dated November 1, 1961, notified appellant that his inspection station privileges were suspended until February 1, 1962. This suspension imposed by the Secretary of Revenue is the subject of this appeal.

The Commonwealth contends under the provisions of the aforementioned section 834, subsec. "f" of The Vehicle Code that these facts warrant the exercise of the Secretary of Revenue's discretion to suspend. Appellant contends that the aforementioned provision of The Vehicle Code limits the situations which warrant such suspension to the following: (a) The provisions of the act are not being complied with; (b) the directions of the secretary are not being complied with; (c) the business of such stations in connection with such inspections is being improperly conducted. Appellant further contends the instant facts do not fall within any of the three situations.

We believe the only applicable provision for our consideration is whether or not the "business of such stations in connection with such inspections is being improperly conducted." Appellant urges that the suspension could not be embraced within this language because (a) a reasonable interpretation of this section of the statute would lead to the conclusion that "improper conduct" would be related to the technical manner or form by which appellant conducted official inspection stations and not to any outside activities, and (b) if bookmaking conducted on part of the premises used for official inspection stations comes within the secretary's interpretation of "improper conduct", the statute in question is unconstitutional because it is vague and indefinite as to what is "improper conduct."

318

Prior to our determination of the merit of appellant's position, we make the following observation. The privilege of operating a motor vehicle inspection station is not unrestricted. It is not embraced within the term and concept of "civil rights." The right to so operate is a license and is not a contract or property right. Even if such license was a property right, it would be held in subordination to such reasonable regulations by the Commonwealth as are clearly necessary to preserve the safety, health and morals of the people. The enforcement of such regulation by the revocation or suspension of this privilege does not constitute the taking of property without due process of law: Appeal of Klepeis, 20 Lehigh 59; Rineer v. Boardman, 32 D. & C. 27. It is apparent that the regulation of an inspection station is associated with the safeguarding of motor vehicles upon our public highways. It is embraced within the right of the Commonwealth to preserve the safety of its citizens.

We believe the power to regulate in this matter is apparent. We must, therefore, concern ourselves with the regulation itself, in terms of the objections made by appellant.

Appellant urges that the statute be interpreted to apply only with exclusive reference to the technical manner in which the inspections are conducted. If we construe the statutory language the *"business of such stations"* together with the words following this phrase, *"in connection with such inspections is being improperly conducted"* as emphasizing or modifying in *connection with such inspections*, there would be merit to appellant's contention. Such a construction would lend weight to the argument that improper conduct would be related only to the technical violations such as defective or inadequate inspections. Advocating this construction, appellant contends there is no evidence in

the record of defective or inadequate inspections.

On the other hand, we must consider another, and we believe more reasonable, connotation of the same words. We believe that in issue before us is the business of such stations, and that the words "in connection with such stations is being improperly conducted", modifies that phrase rather than the phrase contended for by appellant.

It is apparent that the intention of the legislature was not to restrict the secretary's discretion in relating *improper conduct* exclusively to the technical manner or form by which the inspection stations are conducted. Contrariwise, we do not believe the legislative intent was to vest the secretary with discretion to act on the basis of improper conduct off the premises. Nor do we believe the applicable statutory section would embrace the same offense away from the inspection premises. But we do believe the legislature intended that these inspections be conducted in an atmosphere which would conduce toward sound and good inspections, and that this intention is manifested in the statute here under consideration which requires that the business of stations where inspections are made must be properly conducted. This we believe is a reasonable statement of the meaning of the statute. The misdemeanor of maintaining a gambling establishment at such business place is not the proper conduct of such business.

We are not of the opinion that technical proficiency alone is what was intended to be required by the statute. We certainly do not believe that the legislature intended that technical proficiency in conducting inspections is in itself adequate reason to preclude the Secretary of Revenue from inquiring into the business surroundings of these inspections. We may only reach a conclusion that the words "improper conduct" relate to the "business" of such stations in connection with

such inspections. We, therefore, find that under the instant facts, appellant is in violation of the terms of the aforementioned section 834, subsec. "f" of The Vehicle Code.

We must next consider appellant's contention that the statute in question is unconstitutional because it is vague and indefinite in the use of the words "improper conduct."

There is no question but that the legislature can delegate to the Secretary of Revenue the power to suspend licensing privileges such as those involved here.

The test to be applied to determine whether there has been an unconstitutional delegation of legislative power was stated by Justice Agnew in Locke's Appeal, 72 Pa. 491. "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." This principle was affirmed in the more recent case of Nester Appeal, 187 Pa. Superior Ct. 313.

A list of some of the earlier cases in which the courts have declared constitutional, acts which authorized administrative officers, boards, and commissions to determine some fact or state of things upon which the law makes, or intends to make its own action depend, can be found in Paul Gima v. The Hudson Coal Co., 106 Pa. Superior Ct. 288, 299, 300, 161 Atl. 903, and of the more recent cases, in Belovsky v. Redevelopment Authority of Philadelphia, 357 Pa. 329, 343, 54 A. 2d 277 (1947), and Santus Unemployment Compensation Case, 177 Pa. Superior Ct. 496, 110 A. 2d 874.

It is necessary, however, that such a delegation of power can be accompanied by appropriate standards or guides to direct the manner in which this delegated power shall be exercised: Holgate Bros. Co. v. Bashore, 331 Pa. 255, 260, 200 Atl. 672 (1938).

The question then for our determination is whether the language of the instant statute establishes definite standards, guides or limitations with regard to the manner in which the Secretary of Revenue may exercise this delegated authority to suspend.

Some of the standards held to be sufficiently definite are "unreasonable obstruction to navigation" (Union Bridge Company v. United States, 204 U. S. 364) ; standard of "reasonable variations" (United States v. Shreveport Grain & Elevator Co., 287 U.S. 77) ; "unfair methods of competition" (Federal Trade Commission v. Gratz, 253 U.S. 421) ; "unduly or unnecessarily complicating the structure" or "inequitably distributing voting power among security holders": American Power & Light Co. v. Securities & Exchange Commission, 329 U. S. 90.

We feel, in view of the foregoing, the statute herein involved is not unconstitutional since the terms "improper conduct" are not vague and indefinite but rather have a definite meaning. The term "improper" is defined by Webster as " (a) Not suited to the circumstances, design, or end; not appropriate, fit or congruous." . . . The term "conduct" is defined as ". . . (2) Act or manner of carrying on, directing, or managing, as a business; management; direction; (3) manner of guiding or carrying oneself; personal deportment; mode of moral action; behavior; . . .

Thus we see that the legislature has directed that the Secretary of Revenue may suspend an official inspection station license where the business with which the inspection station is being carried on is being conducted in an inappropriate, unfit, or unsuitable manner.

Herein we feel there is an adequate standard based on the plain meaning of the terms involved. This is especially true when we consider that the terms used

in cases cited above have been held to be sufficient tests or standards.

Thus we feel that the statute is constitutional and the wording of section 834, subsec. "f" of The Vehicle Code must be interpreted as a constitutional provision.

An act of the legislature should not be declared unconstitutional unless "it violates the Constitution clearly, palpably, plainly; and in such manner as to leave no doubt or hesitation in our minds": L. J. W. Realty Corp. v. Philadelphia, 390 Pa. 197, 205, 134 A. 2d 878, 883 (1957).

Appellant has failed to discharge this heavy burden placed upon him to overcome this strong presumption of constitutionality. We have already indicated the "improper conduct" concept of the applicable statutory language as applied to the instant case. We believe the plea of guilty to gambling on the inspection station premises is such improper conduct as to warrant the suspension ordered by the Secretary of Revenue in this case.

We therefore enter the following

### Order

Now, January 30, 1962, the appeal of Edward J. Grasavage from the suspension of his license to operate an "Official Inspection Station" by the Secretary of Revenue, is hereby dismissed and the order of suspension is affirmed.

Costs to be paid by appellant.